[Cite as *Carnes v. Carnes*, 2015-Ohio-2925.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MOLLY K. CARNES, | : | APPEAL NO. C-140520 |
| | | TRIAL NO.  DR-1400169 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| FRANK CARNES, JR., | : | |
| Defendant-Appellee. | : | |

Appeal From:    Hamilton County Court of Common Pleas, Domestic Relations
                Division

Judgment Appealed from is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  July 22, 2015

*Phillips Law Firm, Inc.,* and *Alfred Wm. Schneble III,* for Plaintiff-Appellant,

*O'Connor Mikita & Davidson LLC* and *Michael J. O'Connor*, for Defendant-Appellee.

Please note:  this case has been removed from the accelerated calendar.

**CUNNINGHAM, Presiding Judge.**

{¶1}   Plaintiff-appellant Molly K. Carnes appeals from the judgment of the Hamilton County Court of Common Pleas, Domestic Relations Division, denying her Civ.R. 60(B) motion to set aside the divorce decree that terminated her "marriage" to defendant-appellee Frank Carnes, Jr.  Molly moved to set aside the decree several months after the divorce had become final, claiming that the marriage was void because information she had subsequently discovered demonstrated that Frank had a wife at the time of the marriage.  For the reasons that follow, we reverse the trial court's judgment, set aside the decree of divorce, and remand the cause for further proceedings.

## I. Background Facts and Procedure

{¶2}   The parties married in November 2004 and had no children.  In January 2014, Molly filed a complaint for divorce under R.C. 3105.01(K), on the ground of incompatibility.  She submitted with her complaint a marital settlement and separation agreement ("separation agreement"), which was signed by both parties, divided the marital property and obligations, and contained a clause that precluded the separation agreement's merger into a contemplated decree of divorce.  The settlement agreement, in part, required Molly to pay Frank $15,000 for his portion of the marital equity in the marital residence and to transfer to Frank an IRA retirement account.

{¶3}   Frank consented to Molly's request for the divorce.  On April 1, 2014, the trial court granted the divorce and adopted and incorporated the parties' separation agreement into the decree of divorce.

{¶4}   On June 16, 2014, Molly moved to vacate the divorce decree.   She contended that her marriage to Frank was void because Frank had a spouse named Tricia Jean Green at the time of the marriage, and that she should have the opportunity to terminate her marriage on the basis of this newly discovered bigamy. She also claimed that Frank had defrauded her, and that she had timely moved for relief from the judgment.  The trial court held a hearing to verify Molly's facts before ruling on her motion.

{¶5}   At the hearing, Molly testified that an unusual posting by Tricia on Frank's son's Facebook page that she had observed two weeks after the finalization of the divorce compelled her to view Tricia's Facebook page.  There Molly had observed posts in which Tricia indicated that she had married Frank in 1996 in Dearborn County, Indiana, and that she remained his wife.  Molly undertook an expansive search of public records and confirmed Frank's and Tricia's marriage in 1996, but she was unable to find any documentation of the termination of Frank's and Tricia's marriage.

{¶6}   Molly introduced several exhibits at the hearing, including the marriage certificate of Frank and Tricia issued in Dearborn County, Indiana, printouts of several Facebook pages containing Tricia's mention of her marriage to Frank, and Molly's and Frank's marriage license application in which Frank had indicated that he had not been previously married.

{¶7}   In opposing Molly's motion, Frank testified that he and Tricia had married in Dearborn County, Indiana, in 1996, while he was incarcerated in the Dearborn County Justice Center, but that he believed that the marriage had been "overturned."  His belief was based on a note requesting the dissolution that he had submitted to a police officer at the jail one week after his marriage to Tricia.

3

Although Frank recalled that the note had been returned to him marked "granted," he conceded that he no longer had the document and that Dearborn County had no record of it or any other record of the purported termination of the marriage.

{¶8} Importantly, contrary to Molly's testimony, Frank claimed that Molly had known about his marriage to Tricia and the purported dissolution. Ultimately, though, he claimed to be just as surprised as Molly to learn that Dearborn County did not have any record of his dissolution.

{¶9} Frank urged the court to deny Molly's motion, even though he conceded that Molly had demonstrated her ability to present a legitimate defense if relief were granted. The trial court apparently adopted Frank's position and denied the motion to set aside the divorce decree. Molly now appeals, assigning as error the trial court's "fail[ure] to set aside the divorce decree."

## II. Analysis

{¶10} We review the trial court's denial of the Civ.R. 60(B) motion under an abuse-of-discretion standard. *Strack v. Pelton*, 70 Ohio St.3d 172, 174, 637 N.E.2d 914 (1994); *Scheper v. McKinnon*, 177 Ohio App.3d 820, 2008-Ohio-3964, 896 N.E.2d 208, ¶ 8 (1st Dist.). Therefore, the trial court's decision will not be reversed unless it is arbitrary, unconscionable, or unreasonable. *Scheper* at ¶ 8. "An unreasonable decision is one that no sound reasoning process supports." *Bank of N.Y. Mellon v. Martin*, 1st Dist. Hamilton No. C-140314, 2015-Ohio-2531, ¶ 26.

{¶11} Civ.R. 60(B) states in part:

> On motion and upon such terms as are just, the court
> may relieve a party or his legal representative from a
> final judgment * * * for the following reasons: (1)
> mistake, inadvertence, surprise or excusable neglect; (2)

4

newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment.

{¶12} To prevail on her motion under Civ.R. 60(B), Molly was required to demonstrate that she has a meritorious defense or claim to present if relief is granted; that she is entitled to relief under one of the grounds set forth in Civ.R. 60(B)(1)-(5); and that she made the motion within a reasonable time, and where the grounds of relief are found in Civ.R. 60(B)(1), (2), or (3), not more than one year after the judgment of the court granting the divorce decree. *See GTE Automatic Electric, Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus.

{¶13} Civ.R. 60(B) was adopted to provide an exception to the "finality of judgment rule," and allows for relief from judgment under the proper circumstances when it is in the "interest of fairness and justice." *Adomeit v. Baltimore*, 39 Ohio App.2d 97, 101, 316 N.E.2d 469 (8th Dist.1974). We must "liberally construe" this "remedial rule." *Blasco v. Mislik*, 69 Ohio St.2d 684, 685, 433 N.E.2d 612 (1982).

## A. Meritorious Claim to Present

{¶14} The first issue we review is whether Molly sufficiently demonstrated that she has a meritorious claim to present if relief is granted. Molly argues in part that if the decree of divorce is set aside, she has a meritorious claim to present, in that she is entitled to a divorce or annulment on the ground that Frank had a living spouse at the time of the marriage. We agree.

{¶15} In Ohio, a marriage is presumed to continue until the death of a spouse or the entry of a court decree dissolving the marriage. *Indus. Comm. v. Dell*, 104 Ohio St. 389, 401, 135 N.E. 669 (1922). Where two marriages have been "solemnized" and the record is silent as to whether there has been a divorce of the parties to the first marriage, there is a presumption that the status of the parties to the first marriage continues. *Id.* at paragraph three of the syllabus, cited in *Kaur v. Bharmota*, 182 Ohio App.3d 696, 2009-Ohio-2344, 914 N.E.2d 1087, ¶ 8 (10th Dist.). The burden is on the party claiming the validity of the second marriage to overcome the presumption. *Id.* If that presumption is not overcome, the second marriage is determined to be bigamous and void. *See Evans v. Indus. Comm.*, 166 Ohio St. 413, 414, 143 N.E.2d 705 (1957); *Dibble v. Dibble*, 88 Ohio App. 490, 511, 100 N.E.2d 451 (5th Dist.1950).

{¶16} Although a bigamous marriage is void, *Darling v. Darling*, 44 Ohio App.2d 5, 7, 335 N.E.2d 708 (8th Dist.1975), the domestic-relations statutes allow for a divorce. *See Eggleston v. Eggleston*, 156 Ohio St. 422, 103 N.E.2d 395 (1952) (interpreting similar predecessor law under the General Code), cited in *Bubsey v. Oleyar*, 8th Dist. Cuyahoga Nos. 76226 and 76267, 2000 Ohio App. LEXIS 2255 (May 25, 2000). Where a divorce is sought in this situation, the party seeking the divorce must proceed on the ground that the other party had a husband or wife at the

time of the marriage, as provided in R.C. 3105.01(A). *See Bubsey*, citing *Eggleston* at paragraph one of the syllabus. A party in that situation may alternatively seek an annulment on the same grounds. *See* R.C. 3105.31(B).

{¶17} Thus, Molly met the first prong of the Civ.R. 60(B) test as she demonstrated that she has a meritorious claim to present if relief is granted—the ground for divorce set forth in R.C. 3105.01(A) or the ground for an annulment set forth in R.C. 3105.31(B).

### B. Ground for Relief

{¶18} The next issue is whether Molly stated one of the grounds for relief under Civ.R. 60(B). Molly argues that relief was most appropriate on the basis of newly discovered evidence, in accordance with Civ.R. 60(B)(2). But we disagree that Civ.R. 60(B)(2) was the operable provision.

{¶19} To qualify as newly discovered evidence as contemplated under Civ.R. 60(B)(2), the new evidence must not have been discoverable by due diligence within the time limits set forth for a motion for a new trial. *See Cuyahoga Support Enforcement Agency v. Guthrie*, 84 Ohio St.3d 437, 442, 705 N.E.2d 318 (1999); *Smith v. Smith*, 8th Dist. Cuyahoga No. 83275, 2004-Ohio-5589, ¶ 16. Here, the evidence of the bigamy was available when Molly filed for divorce. And with due diligence, she could have discovered the bigamy in time to move for a new trial under Civ.R. 59(B).

{¶20} But Molly never looked, because Frank's marital status at the time of his marriage to Molly was not an issue in the divorce proceedings. According to the testimony, both parties believed that their marriage was valid; Molly filed for divorce on the ground of incompatibility, as set forth in R.C. 3105.01(K), and Frank did not challenge that basis.

{¶21} Although Molly cannot be afforded relief under Civ.R. 60(B)(2), the operative facts that she presented in support of her motion satisfied the condition of "mistake" as contemplated by Civ.R. 60(B)(1). She demonstrated that she filed for divorce under R.C. 3105.01(K) under the misconception that she was legitimately married to Frank.

{¶22} While Molly did not refer to Civ.R. 60 (B)(1) or use the term "mistake" when presenting this issue in the trial court proceedings and in her argument on appeal, this issue was necessarily a subpart of her motion to vacate based on her recent discovery of the bigamy. Thus, the evidentiary basis for this issue was adduced before the trial court, Frank had the opportunity to challenge it, and this court may address it, even if Molly did not articulate it as such, unless we put form over substance, in contradiction to the remedial purpose of Civ.R. 60(B). *See C. Miller Chevrolet, Inc. v. Willoughby Hills*, 38 Ohio St.2d 298, 301, 313 N.E.2d 400 (1974) ("[I]t is evident from the discretionary language employed in App.R. 12(A) that a court of appeals *may* pass upon an error which was neither assigned nor briefed by a party."); *State v. Peagler*, 76 Ohio St.3d 496, 668 N.E.2d 489 (1996), syllabus ("While an appellate court may decide an issue on grounds different from those determined by the trial court, the evidentiary basis upon which the court of appeals decides a legal issue must have been adduced before the trial court and made a part of the record thereof.").

{¶23} Frank merely argues now, as he did in the trial court, that there is conflicting evidence concerning when Molly learned of his marriage to Tricia and whether his marriage to Tricia was ever terminated. But this first identified conflict, as explained below, is irrelevant to our analysis because there is no conflict in the evidence with respect to the fact that Molly learned of the bigamy after the divorce.

The second identified conflict is not a conflict—Frank failed to overcome the presumption that his marriage to Tricia continued. *See Dell*, 104 Ohio St. 389, 135 N.E. 669, at paragraph three of the syllabus; *Evans*, 166 Ohio St. at 414, 143 N.E.2d 705.

{¶24} The trial court, in ruling on Molly's motion to vacate the divorce decree, appeared to focus solely on Molly's contention that she only recently had discovered that Frank and Tricia had married. While the court found that claim dubious, the court failed to consider that the evidence only showed that at the time of Molly's and Frank's divorce, both Molly and Frank had believed that their marriage was valid and not void due to the purported bigamy. This evidence established that the mistake was a mutual mistake of a material fact and, thus, a ground to vacate the decree of divorce. *See Smith*, 8th Dist. Cuyahoga No. 83275, 2004-Ohio-5589, at ¶ 17.

### C. Timeliness of the Motion

{¶25} The final issue is whether Molly's motion was timely filed. Under the rule, the motion must be made within a reasonable time, and where the circumstances presented fall under Civ.R. 60(B)(1), no later than one year.

{¶26} In this case, Frank has never challenged the timeliness of the motion, and the trial court did not expressly address this issue. But the record demonstrates that Molly filed the motion to vacate less than three months after the issuance of the divorce decree, after undertaking an exhaustive search of the public records to substantiate Tricia's claim that she remained married to Frank. We determine under these facts that the motion was timely filed.

9

## D. Abuse of Discretion

{¶27} Considering this record, we conclude that the trial court abused its discretion when it denied Molly's motion to set aside the divorce decree, as the court's decision cannot be supported by any sound reasoning process. Although a claim under Civ.R. 60(B) requires a careful balancing of the two "conflicting principles of finality and perfection," *Guthrie*, 84 Ohio St.3d at 441, 705 N.E.2d 318, this case does not involve a determination that makes finality most compelling, such as parentage, visitation, or support of a minor. *See Strack*, 70 Ohio St.3d 172, 637 N.E.2d 914. While there is a compelling need for finality in the termination of marriages, *see In re Whitman*, 81 Ohio St.3d 239, 243-243, 690 N.E.2d 535 (1998), there is nothing in the record to suggest that either Molly or Frank has remarried since the entry of the divorce decree.

{¶28} Molly's motivation for moving to vacate is a factor to be considered also in determining whether she may obtain that relief. *See id.* at 243. Frank argues that she was motivated by a desire to avoid her financial obligations to him under the separation agreement. But that separation agreement, by its own terms, is a contract that did not merge into the decree of divorce. Therefore, Molly's desire to avoid those obligations should have been afforded little weight in determining whether the decree that misrepresents the legal relationship between the parties should be set aside.

{¶29} The court has an important interest in correcting the record, and Civ.R. 60(B) should be used when it is equitable to do so. *See Tom Sweeney, Inc. v. Porter*, 1st Dist. Hamilton No. C-980337, 1999 Ohio App. LEXIS 1914 (Apr. 30, 1999). Thus, we sustain the assignment of error.

### III. Conclusion

**{¶30}** Because Molly established that the parties were mistaken as to the validity of their marriage, that she should have proceeded under a different statutory provision in terminating her marriage, and that she timely filed her Civ.R. 60(B) motion, she was entitled to relief from judgment. Accordingly, we reverse the trial court's judgment denying Molly's Civ.R. 60(B) motion, vacate the divorce decree, and remand this cause for further proceedings consistent with the law and this opinion.

*Judgment reversed and cause remanded.*

**MOCK, J.,** concurs
**DEWINE, J.** dissents.

**DEWINE, J.,** dissenting.

**{¶31}** I must respectfully dissent. The majority in this case exceeds the appropriate limits of appellate review by choosing to upset a final judgment on a ground that was not raised below and that finds only tenuous support in the record.

**{¶32}** A tenet of our system of review is the idea that appellate courts should not ordinarily pass on issues not raised in the trial court. We don't impose this rule to be pedantic or mean-spirited; rather, we adhere to it because it advances not only the orderly administration of justice but also the interests of fundamental fairness. In the words of the Supreme Court, "[f]airness, which is required for the operation of the adversary system of justice, requires at least that the parties be allowed in the trial court to present evidence that would support or refute the legal theory addressed by the court of appeals." *Peagler*, 76 Ohio St.3d at 499, 668 N.E.2d 489.

11

{¶33} The majority grants relief under Civ.R. 60(B)(1), which allows for relief from judgment for mutual "mistake." In the trial court, Molly sought relief under Civ.R. 60(B)(3) for fraud. She also made passing reference to "newly discovered evidence," a basis for relief under Civ.R. 60(B)(2). Nowhere was any mention made of "mistake" as a basis for relief. Frank's attorney, we may presume, tailored the evidence presented to the legal arguments raised. We have no way of knowing if he would have presented anything different had the issue been one of mutual mistake. Thus, it seems fundamentally unfair for the majority to decree that the judgment be reopened for a mutual mistake when that argument was not raised below.

{¶34} Not only was mistake not presented below, it was not raised here either. The sole issue presented for review was that Molly was entitled to relief based on newly discovered evidence under Civ.R. 60(B)(2). We should be hesitant to reverse the judgment of a trial court for a reason not even raised by the parties in their briefs.

{¶35} The evidence that the majority bases its decision on is not all that strong, either. In order to find mutual mistake, it had to credit Frank's rather incredulous story that he engaged in a sham marriage, which he believed was annulled because of some note he received from prison officials that he had in his possession a few years ago but has now lost. It had to discount the evidence introduced from Tricia's Facebook posts that made the marriage seem like much more than was represented by Frank. And the court had to create its own view of Molly's testimony. At trial, she testified she knew nothing about Frank's marriage to Tricia. The trial court didn't believe her, concluding that her "testimony concerning her 10-year marriage to Husband and her knowledge, or lack thereof, concerning Husband's prior wife (wives) did not suffice to convince the Court." But the majority

12

nonetheless concludes "that the evidence only showed that at the time of the divorce, both Molly and Frank had believed their marriage was valid and not void due to the purported bigamy."

{¶36}     This view of the evidence seems a stretch, at best.  While there was no evidence presented at the hearing directly contradicting the unadvanced mutual mistake theory, the evidence in support was extremely weak.  It hardly seems the type of evidence an appellate court should rely upon in reversing a trial court's decision and disturbing a final judgment.

{¶37} A court abuses its discretion when its "attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).  Finding nothing of the kind in the trial court's decision, I dissent.

Please note:

The court has recorded its own entry on the date of the release of this opinion.